UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTONIO MELENDEZ,

                              Petitioner,          **No. 06-CV-6416(VEB)**
                                                   **DECISION AND ORDER**

        -vs-

ROBERT A. KIRKPATRICK,

                              Respondent.
_____

## I.      Background

By a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, *pro se* petitioner

Antonio Melendez ("Melendez" or "petitioner") has challenged the constitutionality of his state

custody pursuant to a 2002 judgment of conviction on charges of depraved indifference murder

and weapons possession charges.  The parties have consented to disposition of the instant

petition by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

Melendez's convictions stem from the murder of Stephen Hewitt ("Hewitt" or "the

victim") on October 13, 2000. That evening, Hewitt and his friend, Thomas Palermo

("Palermo"), met for a night of bar-hopping in the City of Rochester. Palermo, after having

consumed alcoholic beverages and cocaine, decided that he wanted to replenish his drug supply.

Trial Transcript at 417 (hereinafter "T.__").  Between 9:30 p.m. and 10:00 p.m., Palermo left the

downtown-area bar in his pickup truck with Hewitt as his passenger.

Palermo drove his truck onto Hague Street in search of someone to sell him cocaine. He

was waved down by a man who agreed to bring him cocaine in exchange for $100. Palermo, who

-1-

was drunk, handed over the cash. However, the man never returned with the cocaine. Palermo waited five to ten minutes and then drove down Hague Street, turned around, and drove back down the street. Palermo was flagged down by a second man. After some discussion the second man ripped a $100-dollar bill out of Palermo's hand and ran.

At that point, Hewitt, who was intoxicated, became very upset with Palermo having been ripped off. T.420-26. Hewitt got out of Palermo's truck and started shouting something to the effect of, "Where's our money, where's our stuff?"T.427-28. Hewitt was punched three times by a man identified only as "David" and fell to the ground. Jason Brogan ("Brogan"), a bystander watching the events unfold, called to Palermo to "get his buddy out of there." T.353-55, 428, 528-29. Palermo walked over to Hewitt, who was lying on the ground, helped him up, and walked him back to the truck. T.356, 428, 528-29.

By this point, there was a crowd of about 20 to 25 surrounding Hewitt. Some of the bystanders were standing as close as a foot away from Hewitt. Petitioner, holding a gun, then walked up to Hewitt and stated,"Fuck this." Petitioner fired one time, striking Hewitt in the head. T.358-59, 429, 530-31, 685. At the moment petitioner pulled the trigger, Palermo was seated directly next to Hewitt. Other witnesses who had gathered around the truck were as close as eight inches from Hewitt when he was shot. T.376, 428-30, 686. Hewitt died of a single gunshot wound to the facial area of his skull. T.503.

After shooting Hewitt, petitioner fled on foot, firing two additional shots into the air as he ran. Petitioner then drove away in his car, a white Honda Civic. T.735-36. Palermo did not realize that his companion had been shot and killed, and so he drove his truck away, only to have Hewitt's corpse fall out of the passenger door a short distance down Hague Street.

Petitioner initially gave a statement to the police stating that he did not mean to shot Hewitt. At trial, however, petitioner claimed that he shot Hewitt in self-defense. Petitioner testified that he intentionally fired the gun at Hewitt's face because he "figured" Hewitt was reaching for a gun. Petitioner also said it "looked like" Hewitt was reaching for a gun. Petitioner explained, "I got behind him, when he turned around I seen [sic] what I thought was a gun in his hand and I fired a shot." T.735. Petitioner further stated that prior to shooting Hewitt, petitioner had gone to his car to retrieve his gun. After obtaining the gun, petitioner ran back to Palermo's truck and shot the victim. T.755.

Petitioner testified on cross-examination that he understood that firing a gun into someone's face could result in death. T.788. Additionally, petitioner conceded that he could have gotten into his car and left, but chose not to. T.783.

The jury rejected petitioner's justification (self-defense) argument. On May 24, 2002, the jury returned a verdict convicting him of one count of second degree (depraved indifference) murder (New York Penal Law § 125.25 (2)), and both charges of criminally possession a weapon. The jury acquitted petitioner of murder in the second degree under an intentional theory. Petitioner was sentenced on June 12, 2002 to concurrent terms of imprisonment, the greatest of which was an indeterminate term of imprisonment of 25 years to life.

Petitioner appealed his convictions to the New York State Supreme Court, Fourth Department. His primary argument was that the evidence did not support the conviction for depraved indifference murder, because "the undisputed evidence at trial established that the decedent in this case . . . was shot with the intent to kill" on the part of the perpetrator. Petitioner's Appellate Division Brief,  p. 6, Respondent's Appendix "C". Petitioner

acknowledged that this issue was unpreserved, but asked the Appellate Division to reach the issue under its discretionary "interests of justice" review power. In the alternative, petitioner argued that trial counsel was ineffective in failing to preserve the legal insufficiency claim by timely objection. The Fourth Department did not address the latter claim, because it chose to review the legal sufficiency claim on the merits, which it rejected it in a memorandum decision and order dated October 1, 2004. The Fourth Department held that petitioner's "act of holding a gun that ultimately discharged close to the victim's face in the course of a scuffle was an act sufficiently reckless to create a grave and substantial risk of death." *People v. Melendez*, 11 A.D.3d 983 (App. Div. 4th Dept. 2004).

Some two weeks after the Fourth Department affirmed his conviction, on October 19, 2004, the New York Court of Appeals issued its decision in *People v. Payne*, 3 N.Y.3d 266 (N.Y. 2004), in which it declared, for the first time, that "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder." *Payne*, 3 N.Y.3d at 272. By motion dated October 28, 2004, petitioner's appellate counsel sought re-argument, or, in the alternative, re-consideration, of the decision upholding the conviction, primarily on the basis that *Payne* mandated reversal. In addition, petitioner's appellate counsel argued that the Fourth Department had misapprehended the facts of the case when it indicated that the shooting had occurred "in the course of a scuffle." The Fourth Department denied the motion for reargument by order dated December 30, 2004. *People v. Melendez*, 13 A.D.3d 1235 (App. Div. 4th Dept. 2004).

Melendez then sought leave to appeal to the New York State Court of Appeals with regard to the original Fourth Department order affirming his conviction. Acknowledging that the

evidentiary insufficiency claim had not been properly preserved (and therefore was outside the scope of review of the Court of Appeals), petitioner's leave application raised only one ground – that counsel had been ineffective for failing to raise the legal insufficiency claim. *See* Respondent's Appendix "K". The Court of Appeals denied leave by decision and order dated May 17, 2005. *People v. Melendez*, 4 N.Y.3d 888 (N.Y. 2005). Petitioner did not seek *certiorari* from the United States Supreme Court, and thus his conviction became final (for AEDPA purposes) 90 days later, on August 15, 2005. The petition in this case was filed on or about August 9, 2006.

Petitioner argues that he is entitled to habeas relief because (1) the evidence was insufficient to support the conviction of depraved indifference murder, because the proof at trial would support only an intentional, rather than a reckless, murder; (2) trial counsel was ineffective in failing to properly preserve the legal insufficiency issue by timely objection; and (3) the Fourth Department misapprehended the facts by reciting that the shooting took place "in the course of a scuffle" and therefore its denial of reargument on the legal sufficiency issue was erroneous.

Respondent concedes that Melendez's second ground for relief (ineffective assistance of trial counsel based upon the failure to preserve the insufficiency-of-the-evidence claim) is properly exhausted and timely. Respondent argues that the first and third claim, however, have not been brought within the applicable statute of limitations, 28 U.S.C. § 2244(d)(1).[1] In the

---

[1]    Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-13, 110 Stat. 1214 ("AEDPA"), a petitioner must file his petition within a one-year limitations period beginning on the latest of four dates, the relevant one here being "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A)); *see also Williams v. Artuz*, 237 F.3d 147, 150, 151 (2d Cir.2001) (citations omitted).

alternative, respondent argues, neither the first (the evidence was insufficient to support the conviction of depraved indifference murder under *People v. Payne*, because the proof at trial supported only an intentional, rather than a reckless, murder) nor the third claim (the Appellate Division erred in denying reargument on the basis that it had misapprehended the underlying facts by reciting that the shooting took place "in the course of a scuffle") have been properly exhausted by being fairly presented in a complete round of appellate review in the state courts. Finally, respondent extensively argues the lack of merit of all three claims.

The Court is not convinced that the first and third claims are untimely. Furthermore, both claims appear to have been properly exhausted. Nonetheless, none of the claims have merit under any standard of review. In this Court's opinion, the interests of judicial economy are better served by directly addressing the merits of Melendez's habeas claims rather first examining the procedural hurdles of timeliness and failure to exhaust.

For the reasons that follow, the petition is denied.

## II.  Analysis of the Petition

**A.  Claim One:  The evidence is not legally sufficient to support the conviction of depraved indifference murder because the proof demonstrated that the shooting was intentional rather than reckless.**

The state of the law with respect to the elements constituting depraved indifference murder from the date of petitioner's conviction, May 24, 2002, to the date petitioner's conviction became final, August 15, 2005, has "gradually and perceptibly changed" through a series of decisions handed down by the New York Court of Appeals. *See Policano v. Herbert*, 7 N.Y .3d 588, 603 (N.Y. 2006). However, as discussed below, the Court finds that the evidence at

petitioner's trial, viewed in the light most favorable to the prosecution, was sufficient to allow a rational trier of fact to find petitioner guilty beyond a reasonable doubt of depraved indifference murder as defined by the law at the time of petitioner's conviction (May 24, 2002), as well as at the time that petitioner's conviction became final (August 15, 2005).[2]

## 1. Sufficiency-of-the-evidence claims – general principles

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . ." *In re Winship*, 397 U.S. 358, 364 (1970). A habeas court reviewing a claim for insufficiency of the evidence must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996) (when reviewing sufficiency-of-the-evidence claims, "all possible inferences that may be drawn from the evidence must be construed in the prosecution's favor"). Thus, "a petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir.2000).

"[A]ssessments of the weight of the evidence or the credibility of witnesses are for the

---

[2]       Courts have applied different approaches in determining whether to apply New York's depraved indifference murder law at the time of petitioner's conviction as opposed to the law at the time petitioner's conviction became final. *Compare Guzman v. Greene*, 425 F. Supp.2d at 311 (E.D.N.Y. 2006) *with Policano v. Herbert*, 453 F.3d 75, 76 (2d Cir.2005); *Fernandez v. Smith*, No. 07 Civ. 6310, slip op. at 36-42 (S.D.N.Y. Jun. 5, 2008) (citing *Bunkley v. Florida*, 538 U.S. 835, 841-42 (2003) (citing *Fiore v. White*, 528 U.S. 23 (1999) (certifying questions to the Supreme Court of Pennsylvania to determine the state of the law at the time a federal habeas petitioner's conviction became final)). The Court has analyzed petitioner's contention under New York's law on depraved indifference murder as it existed at the time of his conviction and as it existed at the time his conviction became final for purposes of calculating the statute of limitations. *Accord Illis v. Artus*, 2008 WL 5666638, at *8 n. 10 (E.D.N.Y. June 5, 2008). The outcome is the same regardless of which date is used.

jury," and thus a habeas court determining whether the evidence is sufficient to satisfy due process requirements will "defer to the jury's assessments of both of these issues." *Maldonado*, 86 F.3d at 35. When considering whether the evidence was sufficient to support a state conviction, a habeas court must "look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999).

### 2.     Elements of depraved indifference murder under New York law

New York's Penal Law provides for two types of second degree murder, intentional murder, which is not at issue here, and depraved indifference murder, of which petitioner was convicted. A person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person . . . ." N.Y. PENAL LAW § 125.25(2). Section 15.05(3) of the Penal Law defines the term "recklessly" as follows: "A person acts recklessly with respect to a result or to a circumstance . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." N.Y. PENAL LAW § 15.05(3).

At the time of Melendez's conviction, the controlling New York Court of Appeals case regarding the interpretation of P.L. § 125.25(2), the depraved indifference murder statute, was *People v. Register*, 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704 (N.Y.1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2159, 80 L.Ed.2d 544 (1984), *overruled by People v. Feingold*, 7 N.Y.3d

288, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (N.Y.2006).[3]   Beginning in 2003 with its decision in

*People v. Hafeez*, 100 N.Y.2d 253, 762 N.Y.S.2d 572, 792 N.E.2d 1060 (N.Y. 2003), the New

York Court of Appeals began incrementally restricting the circumstances under which a

defendant could be found guilty of depraved indifference murder. *Rustici*, 497 F. Supp.2d at 484

(citing, inter alia, *Hafeez* and *People v. Payne*, 3 N.Y.3d 266, 786 N.Y.S.2d 116, 819 N.E.2d 634

(N.Y.2004)). *People v. Payne*, decided on October 19, 2004, is the decision upon which

Melendez sought reargument of his direct appeal. In *Payne*, the New York Court of Appeals

reversed a depraved-indifference murder conviction where there was a point-blank shooting after

the victim did not heed the defendant's advice never to communicate with the defendant's

girlfriend. *See Payne*, 3 N.Y.3d at 271, 786 N.Y.S.2d 116, 819 N.E.2d 634. Significantly, the

*Payne* court opined that "a one-on-one shooting or knifing (or similar killing) can almost never

qualify as depraved indifference murder[,]" *Id*. at 272, 786 N.Y.S.2d 116, 819 N.E.2d 634,

expressly "differentiat[ing] . . . [that case] from homicides in which a defendant . . . shoots into a

crowd or otherwise endangers innocent bystanders." *Id.* at 271, 786 N.Y.S.2d 116, 819 N.E.2d

634 (citations omitted).

Looking at the "recent progression of [its] depraved indifference jurisprudence[,]" the

New York Court of Appeals has opined that  "the law of the State of New York [first] was

articulated by *People v. Register*[, 60 N.Y .3d 270 (1983) ] . . . and remained static through [its]

decision in *People v. Sanchez*, 98 N.Y.2d 373 (2002) . . . which reaffirmed *Register*." *Policano v.*

---

[3]     *Register* distinguished depraved indifference from both intentional murder and reckless
manslaughter. *See* 60 N.Y.2d at 277, 469 N.Y.S.2d 599, 457 N.E.2d 704 (holding that "recklessness is the element
of mental culpability required" in the depraved indifference statute and thus "the focus of the offense is not upon the
subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the
degree of risk presented by defendant's reckless conduct").

*Herbert*, 7 N.Y.3d at 595. Thus, at the time of petitioner's conviction on May 24, 2002, *Register* "state[d] the correct interpretation of the law of New York with respect to the elements of depraved indifference murder . . . ." *Policano*, 7 N.Y.3d at 602. Recklessness was the culpable mental state for depraved indifference murder at the time of his conviction. *E.g.*, *Rustici v. Phillips*, 497 F. Supp.2d at 484 (citing, *inter alia*, *People v. Register*, 60 N.Y.2d at 274, 469 N.Y.S.2d 599, 457 N.E.2d 704).

In *Register*, the defendant, after drinking heavily, shot three individuals in a bar, killing one of them. 60 N.Y.2d at 273-74. Faced with the question of whether intoxication could negate the *mens rea* for depraved indifference murder, the New York Court of Appeals held that the trial court properly declined to instruct the jury that Register's intoxication could be considered in deciding whether he was guilty of depraved indifference murder. The Court of Appeals explained that depraved indifference murder "differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant's conduct." *Id.* at 274. Thus, under *Register*, the elements of depraved indifference murder under P.L. § 125.25(2) included (1) a *mens rea* of "recklessness," referring to a defendant's "conscious disregard of a substantial risk;" (2) an *actus reus*, defined as a defendant "engaging in conduct which creates a grave risk of death to another person;" and (3) an "additional requirement" mandating that the conduct occur "[u]nder circumstances evincing a depraved indifference to human life." 60 N.Y.2d at 276. This last element referred not to a *mens rea* or *actus reus*, but instead to "the factual setting in which the risk creating conduct must occur–objective circumstances which are not subject to being negatived by evidence of defendant's intoxication." *Id.* Although, as *Register* recognized, depraved indifference murder

"resembled" reckless manslaughter, the focus of the offense of depraved indifference murder "[was] not upon the subjective intent of the defendant . . . but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct." Id. at 277 (citations omitted) (emphasis added). Stated another way, under *Register* and its progeny, "[t]he depravity and indifference of the crime was assessed objectively based on a review of the circumstances constituting the offense." *Rustici v. Phillips,* 497 F. Supp.2d 452, 484 (E.D.N.Y. 2007) (citing *People v. Sanchez,* 98 N.Y.2d 373, 381, 82 (N.Y.2002) (reaffirming *Register* and stating that it is the "defendant's disregard of the risk [which] elevates and magnifies the degree of recklessness, itself establishing the required circumstances evincing depraved indifference to human life")).

*People v. Sanchez* was issued on July 9, 2002, slightly less than three months after Melendez's conviction on May 24, 2002. *Sanchez* "ratified *Register*'s continued authority." *Policano*, 7 N.Y.3d at 602, and represented "not the creation of a new legal principle, but the application of long-settled New York law to new facts," *id.* The Second Circuit has recently stated that reviewing courts may properly rely on *Sanchez* "as a means of understanding the applicable law as it existed at the time of [petitioner's] trial . . . ." *Policano v. Herbert*, 430 F.3d 82, 92 (2d Cir.2005); *Policano v. Herbert*, 507 F.3d 111, 115 n. 4 (2d Cir.2007); *Policano*, 7 N.Y.3d at 599-600, 602-03.

In *Sanchez*, the defendant and the victim were acquaintances and on the night of the murder, were both at the home of Sanchez's girlfriend during a birthday party for her daughter. 98 N.Y.2d at 375. After the defendant and the victim exchanged "harsh words . . . in a hallway near the foyer entrance of the apartment," *id.*, the only eyewitness to the incident testified that she observed defendant walking through the entrance doorway from the hallway where two children

were playing in the foyer, away from the victim, who was behind the partially opened door. Then the eyewitness saw defendant abruptly turn around and fire a gun pointed at the victim's chest. The defendant then fled. The entire incident took only a matter of seconds. *Sanchez*, 98 N.Y.2d at 375-76. Although acquitted of intentional murder, the defendant in *Sanchez* was found guilty of depraved indifference murder. A majority of the New York Court of Appeals held that the jury could have found that the murder was not intentional, because the two men were friends, the shooting appeared to have been "sudden, spontaneous and not well-designed to cause imminent death," and the jury may have concluded that this was an "instantaneous, impulsive shooting–perhaps to disable or frighten [the victim], rather than to kill him." The *Sanchez* court found that "a jury [thus] reasonably could have found that defendant's homicidal level of mental culpability was reckless rather than intentional." *Id.* at 377-78.

Now, *Sanchez* clarified that *Register* did not stand for the proposition that "ordinary recklessness" was sufficient to establish depraved indifference murder. Rather, what was required under *Register*'s depraved indifference formulation was a showing of "heightened" or "extreme recklessness," that is, "the conscious disregard of circumstances revealing the exceptional risk of death from the defendant's conduct . . . ." 98 N.Y.2d at 380. *Sanchez* explained that the "crux of [depraved indifference] murder . . . [as defined by *Register*] is recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant's conduct." *Id.* Thus, "when the risk of death is manifestly extreme and unjustified . . . a defendant's disregard of the risk elevates and magnifies the degree of recklessness, itself establishing the required circumstances evincing depraved indifference to human life." 98 N.Y.2d at 381.

The New York Court of Appeals, noting that a jury could have found that Sanchez did not intend to kill his victim, found that under *Register*, "based on an objective assessment of the risk defendant recklessly created and disregarded, the likelihood of causing death from defendant's conduct was so obviously severe that it evinced a depraved indifference to human life. Surely, pointing a gun at [the victim], without the slightest justification, discharging it within not more than 18 inches of his body and striking him in the chest, would permit a jury rationally to conclude that defendant demonstrated an indifference to human life so depraved as to be deserving of the same punishment as intentional murder; that it was virtually a *knowing*, although not intentional, homicide. *Sanchez*, 98 N.Y.2d. at 384 (emphasis in original). The *Sanchez* court concluded that "[defendant's] conduct involved such a high risk of death that it could also lead to the conclusion that it was intentional supports rather than detracts from characterizing it as evincing depraved indifference to human life." *Id.* The *Sanchez* court opined that "purposeful homicide itself is the ultimate manifestation of indifference to the value of human life." *Id.*

The *Sanchez* case also clarified that *Register* did not stand for the proposition that "ordinary recklessness" was sufficient to establish depraved indifference murder. *Register* instead required a showing of "heightened" or "extreme recklessness–the conscious disregard of circumstances revealing the exceptional risk of death from the defendant's conduct . . . ." *Sanchez*, 98 N.Y.2d at 380. As defined by *Register*, the *Sanchez* court explained, the "crux of [depraved indifference] murder . . . is recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant's conduct." *Id.*; *see also id.* at 381 ("[W]hen the risk of death is manifestly extreme and unjustified . . . a defendant's disregard of the risk elevates and magnifies the degree of recklessness, itself

establishing the required circumstances evincing depraved indifference to human life." *Id.* at 381.

"[V]iewing the evidence in the light most favorable to the prosecution," *Jackson*, 443 U.S. at 319, at the time of petitioner's conviction, a reasonable jury applying the law as explicated by the New York Court of Appeals in *Register* and *Sanchez*, could have found the evidence presented at petitioner's trial sufficient to establish guilt beyond a reasonable doubt of depraved indifference murder. Indeed, the facts in Melendez's case are quite comparable to those present in Sanchez, in which the New York Court of Appeals sustained the jury's finding of depraved indifference murder. As the Fourth Department found on Melendez's direct appeal, his "act of holding a gun that ultimately discharged close to the victim's face in the course of a scuffle was an act sufficiently reckless to create a grave and substantial risk of death." *People v. Melendez*, 11 A.D.3d 983 (App. Div. 4th Dept. 2004). Similarly, in *Sanchez*, the New York Court of Appeals found that

> based on an objective assessment of the risk [as dictated by *Register*] defendant [Sanchez] recklessly created and disregarded, the likelihood of causing death from defendant's conduct was so obviously severe that it evinced a depraved indifference to human life. Surely, pointing a gun at [the victim], without the slightest justification, discharging it within not more than 18 inches of his body and striking him in the chest, would permit a jury rationally to conclude that defendant demonstrated an indifference to human life so depraved as to be deserving of the same punishment as intentional murder; that it was virtually a *knowing*, although not intentional, homicide.

*Sanchez*, 98 N.Y.2d at 384 (emphasis in original). Significantly, the fact that Sanchez's conduct "involved such a high risk of death that it could also lead to the conclusion that it was intentional support[ed] rather than detract[ed] from characterizing it as evincing depraved indifference to human life. . . ." *Id.* According to majority in *Sanchez*, "purposeful homicide itself is the ultimate manifestation of indifference to the value of human life." *Id.*

Furthermore, the jury in Melendez's case was entitled to reject his trial testimony claiming that he acted in self-defense and rather credit his statement contemporaneously given to the police after the shooting that he had not intended to kill Hewitt. In his statement, petitioner told the police that Hewitt had gotten into a fight with one of petitioner's friends. Petitioner explained to the police as follows: Hewitt "got up off the ground and as he was getting back in the passenger's side of the pickup truck, I went up and shot him. I didn't mean for the gun to go off. I was just trying to scare the guy." T.641. Petitioner ended his written statement by stating "I didn't mean for this to happen that night." T.642. Accepting Melendez's statement to police, the jury could have found that, as in *People v. Sanchez*, Melendez's actions were "sudden, spontaneous and not well-designed to cause imminent death," *Sanchez*, 98 N.Y.2d at 377-78, and "instantaneous, impulsive–perhaps to disable or frighten [Hewitt], rather than to kill him," *id.* The jury, crediting the version of events given in Melendez's confession, could have concluded that his "homicidal level of mental culpability was reckless rather than intentional[,]" *id.* Thus, under *Register* and *Sanchez*, a rational trier of fact, applying the law in effect at the time of Melendez's conviction, could have found guilt under a depraved indifference theory based on the evidence at trial, viewed in the light most favorable to the prosecution.

The sea-change in New York's law on depraved indifference murder began after *Sanchez*, while Melendez's appeal was pending before the Fourth Department. Specifically, after petitioner's conviction in May 2002, and before August 15, 2005, the date on which petitioner's conviction became final, the New York Court of Appeals issued three decisions narrowing the applicability of the depraved indifference murder statute: *People v. Hafeez*, 100 N.Y.2d 253 (N.Y. 2003), *People v. Gonzalez*, 1 N.Y.3d 464 (N.Y. 2004) and *People v. Payne*, 3 N.Y.3d 266

(N.Y. 2004). In *Hafeez*, the New York Court of Appeals affirmed the Appellate Division's reversal of a depraved indifference murder conviction under a theory of accomplice liability where the evidence showed that the co-defendant had "plotted his revenge for months in advance and effectuated a plan on the night of the stabbing by a scheme intended to place the victim in a position where he would be vulnerable to attack." Defendant Hafeez lured the victim out of the bar, where his co-defendant was waiting with a knife "concealed . . . in his sleeve poised to slip into his hand;" "[t]he plan culminated in a single deliberate wound to the chest that perforated the victim's heart." The New York Court of Appeals deemed it "a quintessentially intentional attack directed solely at the victim." *Hafeez*, 100 N.Y.2d at 258. According to the *Hafeez* court, "there exist[ed] no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability [of heightened recklessness] required for depraved indifference murder," where "both defendants were focused on first isolating, and then intentionally injuring the victim." *Id.* at 259.

The *Hafeez* court further found that a prosecutor seeking a conviction under the depraved indifference statute must prove that a defendant's conduct was "'imminently dangerous and presented a very high risk of death to others'" besides the victim. 100 N.Y.2d at 259 (quoting *Register*, 60 N.Y.2d at 274). The conduct described in *Hafeez*–a premeditated attack which involved luring the victim to an isolated spot, and which culminated in a single, intentional stab wound to the victim's chest–did not meet this standard since it did not present a "very high risk of death to others," *Hafeez*, 100 N.Y.2d at 259. Thus, *Sanchez* was distinguished as "involv[ing] the sudden shooting of a victim by a defendant who reached around from behind a door and fired into an area where children were playing, presenting a heightened risk of unintended injury" to

non-participants. *Hafeez*, 100 N.Y.2d at 259.

*Gonzalez* followed upon the heels of *Hafeez*. There, the New York Court of Appeals determined that defendant Gonzalez could not be convicted of depraved indifference murder where he shot the victim multiple times, with some shots fired at close range–specifically, once in the chest, once in the face from a distance of six to eighteen inches, six times in the head from approximately six inches away, and twice in the back. *Gonzalez*, 1 N.Y.3d at 465-66. Noting that "[a] defendant acts intentionally with respect to a result 'when his conscious objective is to cause such a result,'" *id*. at 467 (quoting N.Y. PENAL LAW § 15.05[1] ), the *Gonzalez* court found that the only "reasonable" conclusion from the evidence was to find "defendant was guilty of an intentional shooting and no other." 1 N.Y.3d at 467 (quotation marks omitted). The *Gonzalez* court clarified that depraved indifference murder still could be found where the defendant's conduct was directed at a "single victim," *id.* at 467. The court reiterated its prior reasoning from *Hafeez* that *Sanchez* differed from the one-on-one killing scenario present in *Gonzalez* because *Sanchez* involved "'the sudden shooting of a victim by a defendant who reached around from behind a door and fired into an area where children were playing, presenting a heightened risk of unintended injury.'" *Id.* (quoting *Hafeez*, 100 N.Y.2d at 259).

The third case of the trio was *People v. Payne*, and it was upon this case that Melendez's appellate counsel premised the motion for reargument. In *Payne*, the defendant and the victim had been friends for decades but the relationship recently had become strained. 3 N.Y.3d at 269. After a day of heavy alcohol consumption, Payne erupted in anger upon discovering that the victim had spoken to his girlfriend. Armed with a shotgun, Payne went to the victim's home and shot him at point-blank range. Payne was convicted of depraved indifference murder, and the

Appellate Division affirmed the conviction. The New York Court of Appeals reversed, finding

that the defendant could not have committed depraved indifference murder. *Id.*

The *Payne* court held that there was a "manifest intent to kill." 3 N.Y.2d at 271. This

holding, however, did not undermine *Sanchez*, because *Sanchez* did not fit into this category of

homicides. *Payne* reiterated its comments in *Gonzalez* and *Hafeez* that *Sanchez* was

fundamentally different because it was of the type of "homicides in which a defendant lacking

the intent to kill (but oblivious to the consequences and with depraved indifference to human

life) shoots into a crowd or otherwise endangers bystanders." *Id.* The *Payne* court explained,

> As the drafters of the Penal Law put it, depraved indifference murder is
> "extremely dangerous and fatal conduct performed without specific homicidal
> intent but with a depraved kind of wantonness: for example, shooting into a
> crowd, placing a time bomb in a public place, or opening the door of the lions'
> cage in the zoo" (Denzer and McQuillan, Practice Commentary, McKinney's
> Cons[olidated] Laws of NY, Book 39, Penal Law § 125.25, at 235 (1967)).
>
> Thus, if a defendant fatally shoots the intended victim once, it could be murder,
> manslaughter in the first or second degree or criminal negligence (or self-defense),
> but not depraved indifference murder. Moreover, it should be obvious that the
> more the defendant shoots (or stabs or bludgeons) the victim, the more clearly
> intentional is the homicide. Firing more rounds or inflicting more wounds does
> not make the act more depravedly indifferent, but more intentional. Absent the
> type of circumstances in, for example, *Sanchez* (where others were endangered), a
> one-on-one shooting or knifing (or similar killing) can almost never qualify as
> depraved indifference murder.

*Payne*, 3 N.Y.3d at 272-73. The *Payne* court relied upon its decision in *Hafeez*, which also had

been relied upon in *Gonzalez*, to distinguish the *Sanchez* case as a one-on-one killing that *could*

qualify as a depraved indifference murder. *Payne*, 3 N.Y.3d at 271 (quoting *Hafeez*, 100 N.Y.2d

at 259) (*Sanchez* "'involved the sudden shooting of a victim by a defendant who reached around

from behind a door and fired into an area where children were playing, presenting a heightened

risk of unintended injury.'"). In sum, *Payne* affirmed *Sanchez*'s holding when it defined depraved indifference murder as "extremely dangerous and fatal conduct performed without specific homicidal intent but with a depraved kind of wantonness . . . ." *Payne*, 3 N.Y.3d at 272 (quotation marks omitted).

This trio of cases–*Hafeez*, *Gonzalez*, and *Payne*–issued after *Sanchez* (which ratified *Register*) and before Melendez's conviction became final–represented a gradual, but perceptible, change in the New York Court of Appeals' interpretation of the "under circumstances evincing a depraved indifference to human life" element of depraved indifference murder. In the interim between *Register* and *Payne*, the standard morphed from an objective assessment of the degree-of-risk of death presented by the defendant's conduct into something that more resembled an assessment of the defendant's mental state. However, according to the New York Court of Appeals, it had continued to "adhere[ ] to a *mens rea* of recklessness in *Hafeez*, *Gonzalez*, [and] *Payne*." *Policano*, 7 N.Y.3d at 602-03.

Notwithstanding this shift in the law, and in particular, the *Payne* decision, Melendez's conviction for deprived indifference murder can be sustained because, viewing the evidence in the light most favorable to the prosecution and, there still was legally sufficient evidence to find guilt beyond a reasonable doubt. In other words, the incremental changes to the law of depraved indifference made in *Hafeez*, *Gonzalez*, and *Payne* do not affect the legality of Melendez's conviction.

First, unlike the instant case, the uncontroverted evidence in *Hafeez*, *Gonzalez*, and *Payne* foreclosed the New York Court of Appeals from reaching any "reasonable conclusion" other than that each of the defendants acted with "a manifest intent to kill." In *Hafeez*, 100

N.Y.2d at 259, the victim was lured out of a bar for the express purpose of being the target of an intentional attack. In *Gonzalez*, 1 N.Y.3d at 467, the defendant repeatedly fired at the victim, striking him 10 times at close range. In *Payne*, 3 N.Y.3d at 269-71, the defendant armed himself with a shotgun before deliberately confronting the victim. Here, in contrast, evidence presented to the jury in this case did not establish a "manifest intent to kill" on Melendez's part. Melendez's statement to the police immediately after the incident contained several averments that he did not mean to shot or kill Hewitt. Although Melendez fired several times into the air as he ran away, he only fired one shot at Hewitt. This is not like the situation in *Gonzalez*, where it was "obvious that the more the defendant shoots (or stabs or bludgeons) the victim, the more clearly intentional is the homicide. Firing more rounds or inflicting more wounds does not make the act more depravedly indifferent, but more intentional." *Payne*, 3 N.Y.3d at 272.

"[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution.'" *Policano v. Herbert*, 507 F.3d at 117 (quoting *Jackson v. Virginia*, 443 U.S. at 326). As discussed in detail above, the evidence presented at petitioner's trial is sufficient to support a rational jury's conclusion that Melendez lacked a "conscious objective" to kill Hewitt, and "instead [petitioner was] recklessly indifferent, depravedly so, to whether [Hewitt's] death occur[red]." *Gonzalez*, 1 N.Y.3d at 467-68.

Furthermore, although *Hafeez*, *Gonzalez*, and *Payne* narrowed the circumstances in which a defendant could be convicted of depraved indifference murder, particularly with respect to a one-on-one killing, the New York Court of Appeals continued to uphold *Sanchez* because that

case "'involved the sudden shooting of a victim by a defendant who reached around from behind a door and fired into an area where children were playing, *presenting a heightened risk of unintended injury*,'" *Payne*, 3 N.Y.3d at 271 (quoting *Hafeez*, 100 N.Y.2d at 259) (emphasis supplied)). The defendant's actions in *Sanchez* thus endangered others. It bears noting that the New York Court of Appeals in *Sanchez* did not explicitly rely upon the danger posed by the defendant's actions to individuals besides the intended victim; nor did the *Sanchez* court suggest that this factor was critical to its finding that the defendant acted with depraved indifference to human life. In subsequent decisions, *see Hafeez*, *Gonzalez*, and *Payne*, however, the New York Court of Appeals repeatedly distinguished *Sanchez* on this ground (i.e., danger to unintended victims). This Court notes that Melendez's case, although a one-on-one shooting, falls within the *Sanchez* "danger to others exception." Viewing the evidence in the light most favorable to the prosecution, *Jackson*, 443 U.S. at 319, the Court finds that Melendez's actions presented a risk of danger to the bystanders watching the incident involving Hewitt. Hewitt's friend was sitting next to him when Melendez fired his gun near Hewitt's head. And, there were other individuals standing less than a foot away from the victim at the time of the shooting. Melendez initially told the police that he was wielding a gun to in order "scare" Hewitt; although he later testified at trial that he was acting in self-defense. The Court, however, must view the available evidence on this point in the light most favorable to the prosecution, and therefore must accept his statements to the police. At the time Melendez fired his gun, there was a crowd of onlookers gathered closely around Hewitt, and Palermo was seated right next to Hewitt in the truck. A rational jury could have found that petitioner, by his actions, had recklessly endangered others in addition to the victim, and presented "a heightened risk of unintended injury," *Hafeez*, 100 N.Y.2d at 259;

*Gonzalez*, 1 N.Y.3d at 468; *Payne*, 3 N.Y.3d at 271.

After Melendez's conviction became final in 2005, the New York Court of Appeals issued two decisions, which articulate its current interpretation of the depraved indifference murder statute. *See People v. Suarez*, 6 N.Y.3d 202 (N.Y. 2005); *People v. Feingold*, 7 N.Y.3d 288 (N.Y. 2006). In *Suarez*, issued a few months after petitioner's conviction became final, the New York Court of Appeals considered two cases involving one-on-one stabbings. Notably, the Court recognized that it was "depart[ing] slightly from the *Register* formulation" by "mak[ing] clear that the additional requirement of depraved indifference has meaning independent of the gravity of the risk." In both appeals in *Suarez*, the convictions for depraved indifference murder were reversed. The *Suarez* court reiterated its observations in *Payne* that the "'use of a weapon can never result in depraved indifference murder when . . . there is a manifest intent to kill,'" and that "'a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder.'" *Suarez*, 6 N.Y.3d at 208 (quoting *Payne*, 3 N.Y.3d at 271, 272) (emphasis in original)). *Suarez* also circumscribed the situations in which "[a] defendant may be convicted of depraved indifference murder when but a single person is endangered," 6 N.Y.3d at 212, to those cases in which "the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die," and those cases in which "a defendant–acting with a conscious objective not to kill but to harm–engages in torture or a brutal, prolonged and ultimately fatal course of conduct against a particularly vulnerable victim [,]" *id.* at 212-13. Finally, the New York Court of Appeals in *Suarez* cited its much earlier decision in *People v. Roe*, 74 N.Y.2d 20 (N.Y. 1989), where the defendant in a game of so-called "Polish roulette" shot the victim at point-blank range

without knowing whether he had chambered a "live" or a "dummy" round, as an example of the "few other extraordinary cases involving conduct that endangered only one person, where the evidence showed not just recklessness, but depraved indifference to human life." *Id.* at 213. The *Suarez* court concluded that in situations other than these, "a jury is foreclosed, as a matter of law, from considering a depraved indifference murder charge whenever death is the result of a one-on-one confrontation." *Id.*

*Suarez* stated that "the mere presence of third persons at the scene of a killing does not convert an intentional homicide directed at a particular victim into depraved indifference murder unless others are *actually* endangered." 6 N.Y.3d at 213 n. 7 (emphasis in original). In *Gonzalez*, for example, a case where the depraved indifference conviction was reversed, the defendant, after shooting the victim, had "'waved the gun at the only eyewitness–the barber–warned him not to say anything and walked out the door[.]'" *Id.* (quoting *Gonzalez*, 1 N.Y.3d at 466) (citation omitted)). Nevertheless, the *Suarez* court again affirmed the conviction in *Sanchez*, following the same line of reasoning it had emphasized in *Hafeez*, *Gonzalez* and *Payne*, namely, that Sanchez had acted with depraved indifference because "'others were endangered.'" *Id.* (quoting *Payne*, 3 N.Y.2d at 272).

*People v. Feingold*, decided in 2006, involved a defendant convicted of first degree reckless endangerment at a nonjury trial after he attempted to commit suicide by sealing his apartment and turning on the gas, which led to an unintended explosion that heavily damaged neighboring apartments. 7 N.Y.3d at 289-90. *Feingold* first acknowledged that the statutory language defining first degree reckless endangerment, i.e., "'when, under circumstances evincing a depraved indifference to human life, [a person] recklessly engages in conduct which creates a

grave risk of death to another person,'" N.Y. PENAL LAW § 120.25, was identical to the language

contained in P.L. § 125.25(2), which defines depraved indifference murder. *Feingold*, 7 N.Y.3d

at 290 & n. 1. *Feingold* recognized that after *Register* and *Sanchez*, the *Hafeez*, *Gonzalez*, *Payne*

and *Suarez* decisions had "pointed the law in a different direction." 7 N.Y.3d at 292-94.

Although "the *Suarez* court did not explicitly overrule *Register* and *Sanchez*, we conclude [in

*Feingold*] that the law has changed to such an extent that *People v. Register* and *People v.*

*Sanchez* should no longer be followed." *Id.*  *Feingold* said "explicitly what . . . *Suarez* stopped

short of saying: depraved indifference to human life is a culpable mental state," 7 N.Y.3d at 294,

rather than an element found by examining the objective set of factual circumstances of the

incident. Because the judge, acting as factfinder at defendant's bench trial in *Feingold* clearly

found that he did not possess the *mens rea* of depraved indifference to human life, the majority

reduced his conviction to second degree reckless endangerment under N.Y. Penal Law § 120.20.

*Id.* at 295, 297 & n. 3.

Because *Suarez* and *Feingold* were decided after Melendez's conviction became final,

and in light of the Second Circuit's affirmance in the case of *Guzman v. Greene*, this Court will

not go on to consider what effect, if any, *Feingold* would have had on this case had it been

decided while Melendez's appeal were still pending. *Guzman v. Greene*, No. 06-1456-pr, 337

Fed. Appx. 27, *29, 2009 WL 2019892, at **1 (2d Cir. July 14, 2009) ("We note, finally, that

*People v. Feingold*, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (2006), which overruled

*People v. Register*, 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704 (1983) and *People v.*

*Sanchez*, 98 N.Y.2d 373, 748 N.Y.S.2d 312, 777 N.E.2d 204 (2002), were decided after

Guzman's conviction became final. We therefore need not discuss how, if at all, this case would

have been affected if *Feingold* had been decided earlier.") (summary order), *aff'g Guzman v. Greene*, 425 F. Supp.2d 298 (E.D.N.Y. 2006) (denying habeas relief on the basis that sufficient evidence supported defendant's conviction for depraved indifference murder and performing independent retroactivity analysis and finding *Feingold* and *Suarez* should not apply retroactively). The Court notes that the New York Court of Appeals in *Policano*, although not presented with retroactivity as a certified question from the Second Circuit, went out of its way to hold that *Hafeez*, *Gonzalez*, *Payne*, *Suarez* and *Feingold*, all of which were issued after the defendant's conviction became final, should not apply retroactively to the defendant's case. *Policano*, 7 N.Y.3d at 604; *accord*, *e.g.*, *People v. Jean-Baptiste*, 11 N.Y.3d 539, 901 N.E.2d 192, 872 N.Y.S.2d 701 (N.Y. 2008).

### B. Claim Two: Ineffective assistance of trial counsel based upon failure to preserve the insufficiency-of-the-evidence claim

Melendez contends that he was denied his Sixth Amendment right to the effective assistance of trial counsel because his defense attorney failed to properly preserve his challenge to the sufficiency of the evidence. In order to establish a claim of ineffective assistance of counsel, a defendant must show that his counsel provided deficient representation, and that the petitioner suffered prejudice as a result of that deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Prejudice requires a demonstration of a "reasonable probability" of a different outcome. *See id.* A reviewing court may review the *Strickland* prongs in either order, and there is no reason to consider both if a petitioner makes an inadequate showing on one. *Id.* at 697.

Here, respondent argues that petitioner's contention was rendered moot by the fact that

the Fourth Department ultimately exercised its interest of justice jurisdiction and reviewed the merits of the legal-insufficiency claim despite the fact that it was not properly preserved. Petitioner thus cannot demonstrate that trial counsel's failure to preserve the claim since the Fourth Department reviewed the claim notwithstanding the lack of preservation. Because Melendez cannot demonstrate a reasonable probability of a different outcome resulting from trial counsel's omission, he cannot establish prejudice, and his *Strickland* claim must fail.

**C.      Claim Three: The Appellate Division erroneously denied re-argument of petitioner's appeal.**

Melendez sought re-argument of his appeal, specifically with respect to the depraved indifference holding, on the basis that the Appellate Division had misapprehended the underlying facts as evidenced by its comment that the shooting took place "in the course of a scuffle." Melendez states in his petition that "all evidence at trial showed that while a scuffle had occurred, the scuffle was between the decedent and a third party and it had ended well before the petitioner shot and killed the decedent." Petitioner, ¶22(C) (Docket No. 1).  Respondent argues that the victim, having been beaten and knocked to the ground, was just about to be driven away from the scene by his friend when he was shot by Melendez. Under these circumstances, respondent argues, the Appellate Division's characterization of the shooting as having occurred "in the course of a scuffle" is a fair one and cannot be called an "unreasonable determination of the facts in light of the evidence" presented at trial. Resp't Mem. (citing 28 U.S.C. § 2254(d)(2)).

As an initial matter, the Court questions whether this claim presents a Federal constitutional issue cognizable on habeas review. "Motions for reargument are addressed to the sound *discretion* of the Judge who decided the prior motion and may be granted upon a showing

that the court overlooked or misapprehended the facts or law or for some reason mistakenly arrived at its earlier decision[.]" *Rodney v. New York Pyrotechnic Products Co., Inc*., 112 A.D.2d 410, 411, 492 N.Y.S.2d 69, 70 (App. Div. 2d Dept. 1987) (citing *Delcrete Corp. v. Kling*, 67 A.D.2d 1099, 1099-1100, 415 N.Y.S.2d 148, 150 (App. Div. 4th Dept. 1979)). In any event, the Court agrees with respondent's argument that the Appellate Division fairly characterized the facts. Thus, there was no "misapprehension" and the appellate court properly declined to grant reargument on that basis. This claim is totally without merit and is dismissed.

## III.    Conclusion

For the reasons set forth above, Melendez's request for a writ of habeas corpus is denied and the petition is dismissed. Because Melendez has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:        October 8, 2010
              Rochester, New York